IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DEWAYNE C. SIMMONS,
    Plaintiff,

vs.                           Case No.: 3:11cv345/RV/EMT

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration,
    Defendant.
_____/

## REPORT AND RECOMMENDATION

       This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. § 401, *et seq*. It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34, and for Supplemental Security Income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

       Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

I.     PROCEDURAL HISTORY

       On October 25, 2007, Plaintiff filed applications for DIB and SSI, and in each application he alleged disability beginning July 27, 2007 (Tr. 13).[1] The applications were denied initially and

---

[1] All references to "Tr." refer to the transcript of Social Security Administration record filed on September 16, 2011 (doc. 5). Moreover, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system.

on reconsideration, and thereafter Plaintiff requested a hearing before an administrative law judge ("ALJ"). A hearing was held on October 1, 2009, and on December 4, 2009, the ALJ issued a decision in which she found Plaintiff "not disabled," as defined under the Act, at any time through the date of her decision (Tr. 13–20). On May 26, 2011, the Appeals Council denied Plaintiff's request for review (Tr. 1). Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007). This appeal followed.

II.  FINDINGS OF THE ALJ

On December 4, 2009, the ALJ made the following findings relative to the issues raised in this appeal (Tr. 13–20):

1) Plaintiff meets the insured status requirements of the Act, for DIB purposes, through December 31, 2012.

2) Plaintiff has not engaged in substantial gainful activity ("SGA") since July 27, 2007, the date he alleges he became disabled.

3) Plaintiff has the following severe impairments: obesity, hypertension, history of fractured pelvis and right humerus, chronic lumbar strain, and posttraumatic arthrofibrosis of the right elbow.

4) Plaintiff has no impairment or combination of impairments that meets or medically equals a listed impairment.

5) Plaintiff has the residual functional capacity ("RFC") to perform light work,[2] with certain exceptions.

6) Plaintiff cannot perform any past relevant work.

7) Plaintiff was born on December 8, 1968, and thus was thirty-eight years of age (a "younger individual") on the date he alleges he became disabled.

8) Plaintiff has at least a high school education and can communicate in English.

---

[2] Light work is defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

9) Transferability of jobs skills is not material to the determination of disability because use of the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not he has transferable job skills.

10) Considering Plaintiff's age, education, work experience, and RFC, there are jobs existing in significant numbers in the national economy that Plaintiff can perform; therefore, Plaintiff has not been under a disability during the time frame relevant to this appeal, that is, from July 27, 2007 (alleged onset), through December 4, 2009, the date of the ALJ's decision.

### III.   STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g),[3] the Commissioner analyzes a disability claim in five steps:

1.  If the claimant is performing SGA, he is not disabled.

2.  If the claimant is not performing SGA, his impairments must be severe before he can be found disabled.

3.  If the claimant is not performing SGA and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.  If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.

5.  Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his RFC and vocational factors, he is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen,

---

[3] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416). Therefore, hereinafter, citations in this Report should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.    PLAINTIFF'S MEDICAL HISTORY AND HEARING TESTIMONY

As an initial matter, the court notes that its discussion of the evidence contained in the administrative file is relatively limited, for the following reasons.  The court's September 21, 2011, Scheduling Order (Doc. 6), in relevant part, directed Plaintiff to file a memorandum that set forth his legal contentions and "specifically cite[d] the record by page number for factual contentions." (*Id.* at 1, emphasis in original).  The court's Scheduling Order further instructed that the "[f]ailure . . . to support factual contentions with accurate, precise citations to the record will result in the contention(s) being disregarded for lack of proper development." (*Id.* at 2, emphasis in original). In the medical history section of Plaintiff memorandum, he cites only fifteen pages of the medical record (*see* Doc. 7 at 3–4 (referencing Tr. 238, 241, 247–50, 254–56, 272, 346, 349–51, and 360)). Likewise, Plaintiff has referenced only three pages of the hearing transcript in summarizing his testimony before the ALJ (*id.* at 4 (referencing Tr. 47–49)).  Then, in the three-page "Argument" section of his memorandum, Plaintiff merely alludes, generally, to the page numbers previously referenced; he fails to cite any specific page numbers (*see id.* at 4–6).  As Plaintiff has provided citations to only eighteen pages of the record, total, these are the pages on which the court primarily focuses its outline of Plaintiff's medical history and testimony and its substantive review of his appeal.  Nonetheless, in order to present a backdrop for Plaintiff's claim that the ALJ erred in weighing his credibility, the court also briefly discusses other relevant medical evidence.[4]

A.    Medical History

On July 27, 2007, Plaintiff fell down an elevator shaft while working and was taken to the emergency room at Baptist Hospital (Tr. 238*, 272*).  He complained of pain in his right arm and lower back (Tr. 238*).  An x-ray of the arm revealed a distal humerus fracture, and a computerized tomography scan of the pelvis revealed "an open pelvic type fracture" (*id.**).  Plaintiff underwent an open reduction internal fixation ("ORIF") for both the elbow and pelvis, as well as follow-up

---

[4] For ease of reference, where the page is one that Plaintiff has cited, the reference is followed by an asterisk.

physical therapy ("PT") in the hospital (Tr. 238*, 241*).[5]  He was discharged on August 16, 2007, with a walker and instructions to follow-up after three weeks with David R. Chandler, M.D., the orthopedist who performed the pelvic ORIF (Tr. 238*; *see also* Tr. 250*).

Plaintiff began outpatient PT on September 5, 2007 (Tr. 306).  The initial treatment notes reflect that Plaintiff's "overall rehabilitation potential" was "good," and that Plaintiff should participate in a PT program for forty-five days (*see id.*).  The notes also reflect that Plaintiff "exhibit[ed] [a] good understanding and performance [of] the therapeutic activity" and that he "tolerated today's treatment/therapeutic activity with minimal complaints of pain [or] difficulty" (*id.*).  Plaintiff rated his pain at a ten on a ten-point scale ("10/10"), and the therapist set as a main goal the reduction of Plaintiff's pain (*see id.*).  Other set goals included increasing strength in the lower extremities, decreasing swelling, and improving Plaintiff's gait, ability to bear weight, range of motion, and overall functioning in activities of daily living (*id.*; *see also* Tr. 298, 303).

Plaintiff presented to Dr. Chandler on September 10, 2007 (Tr. 274).  Plaintiff rated his pain at 8/10 and stated he experienced pain about 75% of the time, but he noted his pain was "improving over time" (*id.*).  Following a physical examination, Dr. Chandler advised Plaintiff that he could "begin weightbearing as tolerated [on] both lower extremities" but not on the right elbow (*id.*).  A PT record dated the following day, September 11, 2007, notes that Plaintiff should participate in PT twice per week (Tr. 298).

Plaintiff next presented for PT on October 5, 2007, at which time he rated his pain at 3/10 (Tr. 309, 310).  Plaintiff, however, reported severe pain during therapeutic activities that day (Tr. 310).  The therapist noted that Plaintiff had a low endurance level, secondary to a poor aerobic capacity, and Plaintiff was advised to refrain from long rests between exercises in order to keep his heart rate elevated and increase aerobic capacity (Tr. 307, 310).  Plaintiff returned on October 10, 2007, and reported mild swelling as his chief complaint (Tr. 296).  The therapist noted that Plaintiff was "steadily improving" in areas such as fluidity, strength, and range of motion, and she recommended that Plaintiff return for PT three times a week (*id.*).

---

[5] Plaintiff states in his memorandum that the ORIF's involved "placement of hardware in Plaintiff's body, including plates and screws" (Doc. 7 at 3 (referencing Tr. 247–50*, 254–56*)).

Case No.: 3:11cv345/RV/EMT

It appears that Plaintiff next returned for PT on November 2, 2007 (Tr. 303). The therapist's notes state that Plaintiff had achieved 100% of his goals (apparently as to the pelvic injury), and that he would be discharged to participate in an independent, home exercise program (*id.*). The notes also reflect that Plaintiff displayed full strength ("5/5") in the lower extremities (*id.*; *see also* Tr. 301 (record dated November 30, 2007, reflecting that Plaintiff had attained 100% of his goals on November 2)).

Plaintiff returned to Dr. Chandler in late November 2007, approximately four months after the ORIF surgeries (Tr. 272*). Plaintiff told Dr. Chandler he had been experiencing pain in the elbow and right pelvic/buttock area, which increased with prolonged sitting and standing and resolved with walking, exercise, and medication (*id.**). Plaintiff also stated he had finished PT and was on a PT maintenance program, and he noted he felt better, although he rated his pain at 6.5/10 "all the time" (*id.**). On examination of the upper extremities, Dr. Chandler noted some reduced range of flexion and extension and diminished sensation in the right elbow (*id.**). As to the lower extremities, Dr. Chandler noted that Plaintiff had a normal gait, intact sensation and motor movements, no tenderness about the pelvis, and that Plaintiff could "get up and sit down from a chair" (*id.**). Dr. Chandler reported that Plaintiff could walk a mile and sit or stand thirty minutes at one time (*id.**). Diagnostic imaging of the surgical areas showed satisfactory alignment and healing (*see* Tr. 17; *see also* Tr. 272*, 273). Dr. Chandler did not schedule a follow-up appointment with Plaintiff, but he noted that Plaintiff could return to see him on an "as needed" basis (*see* Tr. 273).

The last PT record in the file is dated December 5, 2007, and it reflects that Plaintiff had then reached maximum improvement as to strength and range of motion in the right arm (Tr. 293). Plaintiff's chief complaint was mild swelling, and the therapist recommended that Plaintiff follow up with Dr. Chandler for a reassessment of the "sh[oulder]/scapular musculature" (*id.*).

Plaintiff was treated at the Escambia Community Clinic ("ECC"), primarily for hypertension, between September 2007 and January 2008 (Tr. 278–84, 329). During this interval, Plaintiff reported no symptoms related to his work accident, and the treatment records reflect that he was in no acute distress and that his physical examinations were generally normal (*see id.*). The records

also reflect that Plaintiff had no swelling in his extremities and no leg pain (*see, e.g.*, 277–78, 280–81, 283–84, 329).

On March 7, 2008, Plaintiff presented to Robert M. Sackheim, M.D., a pain management physician, for an independent medical examination (Tr. 349–51\*). Plaintiff complained of "constant pain" in his right arm, lower back, right pelvis, and right hip that increased with cold weather, prolonged standing, or prolonged sitting (Tr. 349\*). Plaintiff stated that Dr. Chandler had prescribed Lortab, which provided some pain relief, and he stated he had been to PT where he had "good results" (*id.*\*). A physical examination revealed some decreased range of motion in the right elbow (apparently, by ten to fifteen degrees), as well as the right shoulder and (presumably) the back (*see* Tr. 350\*). Dr. Sackheim opined that Plaintiff could work, full-time, in a light duty job with certain restrictions (*see* Tr. 351\*).

On April 29, 2008, Plaintiff presented to R. Barry Lurate, M.D., for an examination in connection with his workers' compensation claim (*see* Tr. 360\*, 361–62). Plaintiff mainly complained of lower, right-sided back pain, and secondarily complained of "some residual stiffness and pain in his right elbow (Tr. 360\*). Plaintiff stated his symptoms had improved somewhat over the past four months, but he was "still unable to do all the things he could [do] before the injury, especially vigorous mechanical-type work" (*id.*\*). Plaintiff also reported, however, that "[s]imple walking, crawling and standing [we]re troublesome" (*id.*\*). A physical examination was essentially normal (*see* Tr. 361). Dr. Lurate stated he "arbitrarily put [Plaintiff] at medium level duty at this stage," and he opined that Plaintiff had a "12% whole person impairment," based on the elbow injury, pelvic injury, pain, and limitations in range-of-motion (*see* Tr. 362).

On May 27, 2008, Plaintiff presented to the ECC, and for the first time complained to ECC staff of pain in the right lower back/hip, in addition to complaints related to his hypertension (Tr. 346\*). Plaintiff described the pain as "moderate" and its onset as "acute," and he stated it had existed for ten months (*id.*\*). Plaintiff reported he had fallen thirty-five feet, that it was a work-related accident, and that he was in "Workers Comp" litigation as a result (*id.*\*). A physical examination revealed no swelling in Plaintiff's extremities, no leg pain, normal gait, and normal posture, although Plaintiff's joints were stiff (Tr. 346\*, 347). Treatment notes from the ECC in

January 2009 are similar, but also note full range of motion in all joints and muscles, no swelling, and no deformities, although Plaintiff was tender over the lumbar, thoracic, and sacral vertebra (Tr. 345). The last ECC treatment note, dated April 27, 2009, reveals that Plaintiff had no backache, no joint pain, and no muscle pain (Tr. 342). He also displayed normal posture, normal gait, and full range of motion, although he remained tender over the vertebra (Tr. 343).

   B. Plaintiff's Hearing Testimony

Plaintiff testified that his pain is so severe that he lies down sixty to sixty-five percent of the day to relieve his pain (Tr. 47–48*). He rated his pain at 6/10 on a typical day (Tr. 48–49*).[6]

V. DISCUSSION

Plaintiff presents only one claim for relief, that is, that the ALJ erred in evaluating his subjective complaints of pain. The Commissioner contends the ALJ evaluated Plaintiff's credibility and considered his claims for DIB and SSI in accordance with applicable statutes and regulations, and further, that the Commissioner's final decision is supported by substantial evidence on the record as a whole and should be affirmed.

As this court is well aware, pain and other subjective complaints are treated by the Regulations as symptoms of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." The Eleventh Circuit first articulated a three-part pain standard in Hand v. Heckler, 761 F.2d 1545, 1548 (11th Cir. 1986), which has been more recently restated as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). *See also* Ogranaja v. Commissioner of Social Security, 186 F. App'x 848,

---

[6] A Vocational Expert ("VE") testified that an individual who needed to lie down two to three times a day for a minimum of 30 minutes at a time could not perform any jobs in the national or regional economy on a full-time, consistent basis (Tr. 60–61).

851 (11th Cir. 2006) (same) (quoting Wilson, 284 F.3d at 1225); Elam, 921 F.2d at 1213–16 (same; also characterizing the current pain standard as the "Hand standard").

Underlying the Hand standard is the need for a credibility determination concerning a plaintiff's complaints. Those complaints are, after all, subjective. "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain [or other symptom]." Scharlow v. Schweiker, 655 F.2d 645, 649 (5th Cir. Unit A Sept. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[7] People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others. Moreover, "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed symptom]. This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts to ensure that the finding is supported by substantial evidence." Hand, 761 F.2d at 1548–49. It is within the ALJ's "realm of judging" to determine whether the quantum of pain or other symptoms a claimant alleges is credible when considered in the light of other evidence. Arnold v. Heckler, 732 F.2d 881, 884 (11th Cir. 1984). The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for the ALJ's credibility determination.

Here, in evaluating Plaintiff's subjective complaints, the ALJ specifically referenced 20 C.F.R. § 404.1529, and she articulated the correct pain standard (*see* Tr. 16). She also specifically noted the complaint on which Plaintiff bases the instant claim for relief, that is, Plaintiff's report that he spends at least sixty percent of the day lying down (Tr. 18). The ALJ, however, concluded that this complaint is not credible for several reasons, including that "such inactivity is contrary to the recommendations of [Plaintiff's] doctors and physical therapist to exercise and lose weight" (Tr. 18).

Plaintiff initially contends that the ALJ erred because "acting 'contrary' to the recommendations of medical providers is not an element in the Eleventh Circuit pain standard"; the

---

[7] Decisions of the United States Court of Appeals for the Fifth Circuit decided on or before September 30, 1981 are binding precedent in the Eleventh Circuit. Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

Case No.: 3:11cv345/RV/EMT

ALJ's "focus on the recommendations of such providers is misplaced"; and the pain standard "looks to the underlying condition, and whether such condition is reasonably expected to give rise to pain," not whether an individual follows his physicians' advice (Doc. 7 at 6). Plaintiff's contentions are unavailing. Initially, the undersigned does not construe the ALJ's statement as faulting Plaintiff for failing to follow the advice of his physicians and physical therapist. The undersigned construes the statement as a comment on the fact that Plaintiff's treatment providers believed he was physically capable of exercise, and that their beliefs as to Plaintiff's abilities are inconsistent with Plaintiff's complaints of disabling limitations. However, even if the ALJ's statement is construed as Plaintiff suggests, the ALJ committed no error that entitles Plaintiff to relief on this claim. This is so because—even if Plaintiff's failure to lose weight and exercise were erroneously considered—the ALJ cited additional reasons for finding Plaintiff less than fully credible, her additional reasons were properly considered, and the additional reasons are more than sufficient to uphold the ALJ's overall credibility findings.

The ALJ generally found that Plaintiff was not credible to the extent his complaints conflicted with the RFC, which she determined based on the opinions of Dr. Sackheim, Dr. Lurate, and Dr. Chandler[8] (*see* Tr. 18). Thus, in effect, the ALJ found that Plaintiff's complaints of disabling limitations are inconsistent with the opinions of the physicians that examined or treated him. More specifically, the ALJ pointed to Dr. Sackheim's opinion in March 2008 that Plaintiff could work, full-time, at a light duty job with no lifting greater than twenty-five pounds, no frequent use of the right arm, and no frequent bending or twisting at the waist (Tr. 18; *see also* Tr. 351*).[9]
The ALJ also pointed to Dr. Chandler's notation in November 2007, just four months after

---

[8] The ALJ determined the following RFC:

[Plaintiff has the RFC] to perform light work [*see* n.2, *supra*] . . . except that he would need to alternate between sitting and standing but would not need to leave the workstation; no more than occasional overhead reaching, other reaching beyond bench or waist height, and pushing and pulling with the right arm; no more than occasional operation of foot controls, climbing stairs, bending, stooping, kneeling, crouching, and crawling; and no climbing ladders, scaffolds, and ropes.

(Tr. 16).

[9] By limiting Plaintiff to "light" work, which involves lifting no more than twenty pounds, the RFC is actually more restrictive than Dr. Sackheim's opinion. Likewise, the RFC is more restrictive than the opinion of a non-examining agency physician, who opined that Plaintiff is capable of lifting up to fifty pounds (*see* Tr. 313; *see also* Tr. 18 (ALJ's rejection of the agency physician's opinion)).

Case No.: 3:11cv345/RV/EMT

Plaintiff's surgeries, that Plaintiff could walk a mile and stand or sit thirty minutes at a time (Tr. 18). The ALJ also referenced Dr. Lurate's opinion in April 2008, that Plaintiff could work with some limitations and, overall, that he would be expected to have a good functional result over the long term (Tr. 17; *see also* Tr. 362).

Continuing, the ALJ noted that Plaintiff's post-surgical physical examinations were essentially normal (*see* Tr. 17), other than some reduced range of flexion, extension, or motion in the right elbow (Dr. Sackheim, Dr. Chandler, Dr. Lurate), and some tenderness or reduced range of motion in the back (Dr. Sackheim, ECC staff), which limitations are sufficiently accounted for in the RFC.

In further discrediting those complaints of Plaintiff that conflict with the RFC determination, the ALJ noted that Plaintiff participates in "quite a bit" of daily activities, including mowing grass, performing various household chores, preparing some meals, driving, shopping, using a computer, going to church, going on walks, and occasionally going fishing (Tr. 18; *see also* 32, 40–41, 42, 170, 172, 173, 175, 176, 177, 183, 184, 185, 221). Plaintiff also visited the library and used public transportation (Tr. 173, 181, 184). The ALJ properly considered Plaintiff's daily activities in evaluating his credibility, *see* Moore v. Barnhart, 405 F.3d 1208, 1212–13 (11th Cir. 2005) ("the ALJ [properly] questioned Moore's contentions that she could not . . . perform light work, in light of her ability to drive, provide childcare, bathe and care for herself, exercise, and perform housework"), as Plaintiff's activities were but one of several factors the ALJ considered. *See* Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (if daily activities are to be considered, the ALJ must do so in the context of all of the evidence in the record).

Plaintiff also contends, generally, that he has an underlying medical condition that can reasonably expected to give rise to the pain he alleges. In support, he points merely to the fact that he is status post ORIF to his pelvis and right arm, and that the ORIF surgeries required placement of hardware in the bone "with significant scarring, resulting in residual pain to Plaintiff" (Doc. 7 at 5). While this may be true, it certainly does not compel a finding that Plaintiff's subjective complaint—that he must lie down 60 to 65% of the day—is credible. Plaintiff cannot argue, and indeed he does not, that the objective medical evidence confirms the severity of Plaintiff's "residual pain." The diagnostic imaging following Plaintiff's surgeries shows that he was progressing, as the

ALJ noted (*see* Tr. 17; *see also, e.g.*, Tr. 361). Additionally, Plaintiff's conclusory allegation—that the nature of his surgeries, resultant scarring, and/or post surgical status satisfy the alternate prong of the pain standard (i.e., that "the objectively determined medical condition can reasonably be expected to give rise to the claimed pain")—is insufficient to establish error by the ALJ. No doctor who examined Plaintiff after his surgeries opined that he was incapable of work. To the contrary, every doctor that rendered an opinion on the issue stated that Plaintiff was physically capable of working at some level—including doctors who examined Plaintiff, reviewed the diagnostic studies, personally recorded Plaintiff's subjective complaints of pain, and/or reviewed the relevant medical records—and some of those opinions reflect beliefs that Plaintiff has physical capacities beyond those determined by the ALJ. Moreover, as previously discussed, Plaintiff's daily activities are inconsistent with the amount of pain he alleges, as are the results of his physical examinations.

The undersigned, of course, is not charged with making independent fact conclusions, but only with reviewing the substantiality of the evidence underlying the conclusions reached by the ALJ. *See* Moore, 405 F.3d at 1211. Having done so here, the undersigned easily concludes that the ALJ's credibility finding is supported by substantial evidence on the record as a whole and, therefore, the finding should be affirmed. *See* Foote, 67 F.3d at 1562; MacGregor, 786 F.2d at 1054.

## VI. CONCLUSION

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed. 42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d at 1560. Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that the clerk be directed to close the file.

At Pensacola, Florida this 4th day of June 2012.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

Case No.: 3:11cv345/RV/EMT

**NOTICE TO THE PARTIES**

Any objections to these proposed recommendations must be filed within fourteen (14) days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).